```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

UNITED STATES OF AMERICA,      :    CRIMINAL ACTION
                               :
v.                             :    NO: 1:10-CR-531-WSD-ECS
                               :
TIMOTHY LYLE CHAPPELL.         :
```

**REPORT AND RECOMMENDATION**

This matter is before the undersigned on Defendant's motion to suppress statements made after his arrest on November 30, 2010, [Doc. 25], and on Defendant's motion to suppress evidence seized in a search of his hotel room, [Doc. 26]. Defendant asserts that the statements were made without a Miranda warning, and that the seizure of the items was made without a warrant, consent, or other justification. The motion came on for evidentiary hearing on March 14, 2007, and briefs were filed thereafter. The motion is now ready for a report and recommendation to the district judge. For the reasons set forth herein, the undersigned recommends that the motion to suppress statements be **DENIED**, and that the motion to suppress evidence be **GRANTED**.

**I.**
**Factual Evidentiary Background**

On November 30, 2010, Joseph Fonseca, a special agent with the Federal Bureau of Investigation ("FBI"), traveled to a hotel located in Conley, Georgia, to execute an arrest warrant on the Defendant, who was believed to be residing in Room 334 of the hotel. (T. 4-7).

The arrest warrant charged Defendant with commercial sexual exploitation of a child under 18 U.S.C. § 1591. (T. 6). Special Agent Fonseca was accompanied by members of the DeKalb and Cobb County Sheriffs' Departments as well as Special Agent Mike Greene – another FBI Agent. (T. 6-7).

At approximately 11:15 a.m. the agents and officers assumed positions around the hotel. (T. 18). Special Agent Greene approached the door and conducted a "knock and announce." (T. 38). Defendant opened the door and Special Agent Greene entered the room with Investigators Bothwell and Bell, two members of the DeKalb County Sheriff's Department. (T. 7, 38-39). Special Agent Fonseca entered the room approximately fifteen seconds later. (T. 10). At the time they entered the room, Special Agent Greene, Inspector Bothwell and Inspector Bell were carrying weapons. (T. 38-39).

Upon entering the room the law enforcement officers conducted a security sweep to ensure that there were no other individuals in the room who might pose a threat to the officers. (T. 39). During the security sweep Special Agent Greene observed a computer, a laptop computer and a cell phone. (T. 40-41). At approximately the same time, Defendant was placed in handcuffs and patted down. (T. 39, 41). The pat-down of Defendant produced approximately ninety dollars in cash, a Georgia Department of Corrections badge and a set of car keys. (T. 39). At the time he was arrested, Defendant

AO 72A
(Rev.8/82)

appeared alert, coherent and not under the influence of any drugs or alcohol. (T. 39-40).

Defendant was removed from the hotel room by Special Agent Fonseca and Investigator Claunch, an officer with the Cobb County Sheriff's Department. (T. 42). At this time, Defendant "kept questioning what the charges were." (T. 13). Special Agent Fonseca responded that he "would explain the charges when he got downstairs." (T. 13).

When Special Agent Fonseca, Inspector Claunch and the Defendant reached Special Agent Fonseca's car, Special Agent Fonseca re-handcuffed the Defendant so that the Defendant's hands were in front, rather than in back. (T. 14). Defendant was placed in the backseat of Special Agent Fonseca's truck and the door to the backseat was left open. (T. 15).

While Defendant was seated in the truck, Special Agent Fonseca received a telephone call from Special Agent Greene who asked Special Agent Fonseca to request consent from Defendant to search the hotel room. (T. 15, 42-43). Special Agent Fonseca asked Defendant for consent to search the hotel room. (T. 16). Defendant consented to the search orally at approximately 11:35 a.m. (T. 16, 20). When he asked Defendant for the consent to search, Special Agent Fonseca was standing and leaning toward the Defendant, who was still seated and handcuffed in the backseat of the car. (T. 16-17).

3

Special Agent Fonseca testified that he did not make any threats or promises when asking for the consent, and that he did not have his weapon drawn when he did so. (T. 16-17).

After Defendant gave his consent to the search, Special Agent Greene searched the hotel room. (T. 43). During the search, the following items were seized and removed from the hotel room:

> (1) a 'Prime Computer' (with all internal components including a hard drive and peripherals); (2) a compact disc binder containing multiple cd's [sic]; (3) a canvas bag containing a manilla envelope and various papers; (4) a Georgia BBT card and a Kentucky food stamp card; (5) a black Samsung cellular telephone and charger; (6) a grey Samsung AT&T cellular phone; (7) a Toshiba laptop computer; (8) an orange folder with miscellaneous papers; (9) a green Sandisk 4 GB 'thumb drive'; (10) two floppy discs (purple and orange in color); (11) a Belkin wireless receiver; and, (12) 8 sticks of computer memory.

[Doc. 34, at 2]. The seizure of these items is the subject of the instant motion to suppress evidence.[1] [Doc. 26].

While the search was occurring, Defendant "was still incessant on what his charges were." (T. 23). Special Agent Fonseca read Defendant a Miranda warning while Defendant "looked on the sheet." (T. 23). Defendant acknowledged that he understood his rights and Special Agent Fonseca asked the Defendant whether he wished to waive the rights. (T. 23). Defendant responded that he wanted to know

---

[1] After the items were seized the government obtained search warrants for one of the two computers, two of the cellular phones, the thumb drive and the floppy disks. 1:11-MJ-214.

what the charges were. (T. 23). Special Agent Fonseca read Defendant the complaint and the attached affidavit. (T. 23-24). While Special Agent Fonseca was reading the complaint, but before Defendant waived his rights explicitly, Defendant made a series of statements that are the subject of the instant motion to suppress statements. (T. 24-25), [Doc. 25].

## II.
## Motion to Suppress Evidence

Defendant seeks to suppress the items seized from his hotel room on the grounds that the seizure was made without a warrant and was not justified by any of the exceptions to the warrant requirement. [Doc. 34]. The Government responds that the Defendant consented to the seizure of his effects when he consented to the search of the hotel room. [Doc. 36, at 5-9].

A search performed without a warrant or probable cause is valid if conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Zapata, 180 F.3d 1237, 1241 (11th Cir. 1999). In order for consent to be deemed valid, it "must be the product of an essentially free and unconstrained choice." Zapata, 180 F.3d at 1241 (quoting United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989)). The Defendant here does not challenge the validity of his consent to search his apartment, but contends

5

that the *seizure* of the items at issue fell outside the scope of the consent. [Doc. 36].

The Fourth Amendment protects against unreasonable searches and seizures of property. Soldal v. Cook County, Illinois, 506 U.S. 56, 65-66, 113 S.Ct. 538 (1992); see also U.S. v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984) (The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'"). "A warrantless search and seizure is presumptively unreasonable, subject to a few specific exceptions." U.S. v. Berrong, 712 F.2d 1370, 1372-73 (11th Cir. 1983) (citing Katz v. U.S., 389 U.S. 347, 357, 88 S.Ct. 507 (1967)).

Here, the Government contends that the warrantless seizure of the relevant items was justified by the consent exception to the Fourth Amendment warrant requirement. [Doc. 36, at 8]. Specifically, the government contends that Defendant's consent to search the hotel room should be interpreted as consent to seize any items "of potential evidentiary value as to the charges against defendant." [Doc. 36, at 9]. Defendant replies that a consent to seize cannot be implied from a mere consent to search. [Doc. 37].

Turning to the arguments, it is unclear whether the government argues that a consent to search encompasses a consent to seize per se, or whether a consent to seize must be inferred from the consent to search. [Doc. 36]. The undersigned will address each argument.

6

**A. Is a consent to search a consent to seize?**

The Supreme Court has recognized that "[t]he right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures." Horton v. California, 496 U.S. 128, 133, 110 S.Ct. 2301 (1990). While "[a] search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." Id. Because of the different nature of the two rights, a consent to search has been held, in at least one unpublished circuit court case, not to constitute a consent to seize. U.S. v. Tatman, 397 Fed. Appx. 152, 174-75 (6th Cir. 2010) (unpublished).

In Tatman, the defendant, a suspect on federal gun charges, signed a form consenting to a "complete search" of his home. Id. at 172-73. The form included the language: "I understand that any contraband or evidence of a crime found during the search can be seized and used against me in any court of law or other proceeding." Id. The Tatman agents searched the defendant's home pursuant to the consent and discovered parts of disassembled guns in a box in a closet. Tatman, 397 Fed. Appx. at 173. Though the searching agent could not determine whether the parts were contraband or evidence of a crime, he seized the parts because "he felt he was entitled to seize them based on Tatman's signing of the consent form." Id.

7

The district court suppressed the seizure of the gun parts. U.S. v. Tatman, 615 F.Supp.2d 644, 690 (S.D.Ohio. 2008). On appeal, the Sixth Circuit Court of Appeals affirmed the trial court on the grounds that neither the consent to seize in the consent form nor the general consent to search language justified the seizure. Tatman, 397 Fed. Appx. at 173-75. In particular, the Court held that neither the language of the signed consent to seize nor the "plain-view" doctrine could justify the search because the gun parts were not readily identifiable as contraband or evidence of a crime. Id. at 175-76. Furthermore, the Court held that the general consent to search did not authorize the seizure because the right to search implicates different rights than the right to seize. Id. at 174-75 ("Tatman's consent permitted the ATF agents to look in the box where they discovered the gun parts and obviated any concerns about the officers interfering with Tatman's *expectations of privacy* in doing so. However, in order for the gun parts to have been seized lawfully, the requirements of the plain view doctrine must be satisfied.") (emphasis added).

Upon consideration, the undersigned finds Tatman persuasive and holds that the waiver of privacy rights under the Fourth Amendment through a consent to search does not act as a separate waiver of possessory rights under the Fourth Amendment. Therefore, a mere

8

consent to search, without more, does not amount to a consent to *seize*. Horton, 496 U.S. at 133.

### B. May Consent to Seize be Inferred in this Case?

While searches and seizures implicate different rights, a search of an item also may require a seizure. U.S. v. Andracek, 2007 WL 1575355 at *6 (E.D.Wis. 2007) (noting that a search of a computer's hard-drive would require temporary interference with the owner of the computer's possessory interest insofar as it would require an agent to access the computer.). Accordingly, under certain circumstances, a consent to seize may be inferred from a consent to search, at least to the extent necessary to effectuate the search. Id.

Having found that a consent to seize may in some circumstances be inferred from a consent to search, the question becomes the extent to which such an inference may be drawn in this case. "When an individual gives a general statement of consent without express limitations, the scope of a permissible search . . . . is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." U.S. v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990); see also U.S. v. Street, 472 F.3d 1298, 1308 (11th Cir. 2006) (citing Strickland). Assuming that the Strickland standard also applies to general consents to *seize*, as well as consents to *search*, the undersigned

9

concludes that the scope of a consent to seize to be inferred from a consent to search should likewise be limited: to what a police officer could reasonably interpret the consent to encompass with regard to seizure.  Id.

The government contends that the consent authorized the agents to seize all of the items because they were "of potential evidentiary value as to the charges against the Defendant, i.e., the sex trafficking of a child." [Doc. 36, at 8]. However, to preserve the distinction between possessory and privacy rights, the consent to seize inferred from a consent to search must be no more than what is "*inherently necessary* to effect that search." Andracek, 2007 WL 1575355 at *6 (emphasis added) (consent to seize a computer inferred from consent to search the computer does not extend to the removal of the computer from the Defendant's premises, finding that the off-premises search was not necessary to the search of the hard drive). Applying the Andracek limitation to the Strickland inquiry, the undersigned concludes that the scope of a consent to seize which reasonably may be inferred from a general consent to search is the minimum level of seizure which an objective person would have believed to be necessary to effectuate such a search.  Andracek, 2007 WL 1575355 at *6; see Florida v. Jimeno, 500 U.S. 248, 252, 111 S.Ct. 1801 (1991) (scope of consent determined by "objective reasonableness" under the circumstances).  Otherwise, to hold that

10

a consent to search would authorize the seizure of property beyond what is reasonably necessary to effectuate the search would obliterate the distinction between the privacy and possessory interests protected under the Fourth Amendment.

Here, there is nothing in the record to suggest that, at the time of consent, the search of the hotel room would have necessitated the seizure and removal of Defendant's property, much less that Defendant contemplated that he was agreeing to such a seizure and removal. Accordingly, the undersigned concludes that a reasonable police officer could not have believed that Defendant had broadly consented to such a seizure and removal of his property by the government. Therefore, because the Government's sole justification for the warrantless seizure – consent to search – is insufficient, the undersigned **RECOMMENDS** that Defendant's motion to suppress evidence, [Doc. 26], be **GRANTED**.

In reaching this conclusion, the undersigned does not find that the agents were limited in the right to seize property under the "plain view doctrine," but finds that the seizure was not justified under this exception. Under the plain view doctrine, an essential predicate to any valid warrantless seizure of evidence is that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Horton, 496

U.S. at 136. In this case, this predicate is met: the officers were lawfully in the hotel room with consent. The two additional conditions that must be met under the doctrine are that the item be in plain view, and that its incriminating character also be "immediately apparent." Id. at 136; see also United States v. Hromada, 49 F.3d 685, 690 (11th Cir. 1995).

In this case, the government abjures reliance on the plain view doctrine and makes no argument that any of the property could be seized under this doctrine. [Doc. 36, at 8]. The undersigned cannot conclude from this record that the items seized could validly have been seized as contraband or as evidence whose incriminating character would have been immediately apparent so as to justify seizure under the plain view doctrine. See Hromada, 49 F.3d at 690.

### III.
### Motion to Suppress Statements

Defendant also contended in his pre-hearing motion that certain statements should be suppressed because they were made involuntarily and in violation of his rights under Miranda v. Arizona.[2] [Doc. 25]. Defendant's post-hearing briefs do not present any arguments in support of the contentions in the motions. Therefore, the undersigned deems the argument waived and abandoned. See U.S. v. Shorr, 2008 WL 655994 at *1 (N.D.Ga. 2008) (denying motion to

---

[2] 384 U.S. 436 (1966).

suppress as abandoned where, after filing a preliminary motion to suppress, "Defendant failed to perfect his motion or otherwise delineate his arguments for the Court's consideration.").

However, even if not abandoned, the evidence at the hearing demonstrated that Defendant was administered a Miranda warning and that his statements were voluntary. Accordingly, the undersigned would **RECOMMEND** that the motion should be **DENIED**, even if it is not deemed abandoned. Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991) (It is well settled that, under Miranda, "[v]oluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning.").

## IV.
## Conclusion

For the reasons set forth above, it is **RECOMMENDED** that the Defendant's motion to suppress statements, [Doc. 25], be **DENIED**, and that the Defendant's motion to suppress evidence, [Doc. 26], be **GRANTED.** In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 24th day of May, 2011.

*/s/ E. Clayton Scofield*
E. Clayton Scofield III
United States Magistrate Judge