# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.                                          1:10-cr-531-WSD-ECS-1

TIMOTHY LYLE CHAPPELL,

                        Defendant.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge E. Clayton Scofield, III's Report and Recommendation ("R&R") [38] and Order on Motion for Reconsideration of R&R [49, 50] regarding Timothy Lyle Chappell's ("Defendant") Motions to Suppress Statements and Evidence [25, 26]; the Government's Motion for Reconsideration of R&R, or in the Alternative, to Re-Open the Suppression Hearing ("Motion for Reconsideration") [40]; and Defendant's Objections to the R&R [52].

## I.     BACKGROUND[1]

At 11:15 a.m. on November 30, 2010, Defendant was arrested at a hotel room in Conley, Georgia, pursuant to a warrant for sex trafficking of a child. After a security sweep of the room by the arresting agents and a pat down, Defendant was handcuffed and taken by Federal Bureau of Investigation ("FBI") Special Agent Joseph Fonseca to his government-owned Chevrolet Tahoe in the parking lot of the hotel. FBI Special Agent Michael Greene remained in the hotel room following the arrest and removal of Defendant. From the time of his arrest until he was read the complaint, Defendant "kept questioning" and was "incessant" regarding the charges against him. The agents did not provide him with information regarding the basis for his arrest while he was in the hotel room or parking lot.

In the parking lot, Defendant was handcuffed with his hands in front of him, and he was placed in the backseat of Special Agent Fonseca's Tahoe. While Defendant was in the vehicle, Special Agent Fonseca received a phone call from Special Agent Greene, who was still in the hotel room. Special Agent Greene asked Special Agent Fonseca to request Defendant to consent to a search of the

_____
[1] The parties have not objected to the facts set out in the R&R and Order amending the R&R, and finding no plain error, the Court adopts the facts in the R&R and Order.

hotel room.  At 11:35 a.m., Defendant gave to Special Agent Fonseca his consent to the hotel room search.  Special Agent Fonseca told Special Agent Greene that consent to search the hotel room had been given by Defendant.  During the search of the room, a number of items were seized.

After Defendant consented to search the hotel room and his consent was communicated to Special Agent Greene, Special Agent Fonseca read and showed an FBI Consent Form to Defendant.  The form included a provision that stated: "I authorize these agents to take any items which they determine may be related to their investigation."  Defendant did not affirm or object to any of the information conveyed to him by Special Agent Fonseca.  Defendant was not given a copy of the form and he was not asked to sign it.  Defendant was not advised of the charges of which he was suspected or the subject of the investigation.

At 11:40 a.m., Special Agent Fonseca advised Defendant of his <u>Miranda</u> rights.  Defendant was allowed to look at the rights advisement sheet while Special Agent Fonseca read from it.  Special Agent Fonseca asked Defendant if he desired to waive his rights and to make a statement.  Defendant asked again what charges were being investigated.  Special Agent Fonseca then read the criminal complaint and the supporting affidavit to Defendant.  Defendant did not expressly waive the

rights of which he had been advised, but made a number of statements about the complaint and affidavit while the documents were read to him.

Defendant was then taken to a booking area at an Atlanta Police Department station. At the booking area, Defendant refused to sign the Consent Form which was read to him when he was in Special Agent Fonseca's Tahoe. Defendant stated to the agents that he believed they were attempting to trick him into signing something different from what he previously had been shown.

As a result of the search of the hotel room by Special Agent Greene, the following items were seized:

> (1) a 'Prime Computer' (with all internal components including a hard drive and peripherals); (2) a compact disc binder containing multiple cd's [sic]; (3) a black Samsung cellular telephone and charger; (4) a grey Samsung AT&T cellular phone; (5) a Toshiba laptop computer; (6) a green Sandisk 4 GB "thumb drive"; (7) two floppy discs (purple and orange in color); (8) a Belkin wireless receiver; (9) 8 sticks of computer memory; (10) a canvas bag containing a manilla [sic] envelope and various papers; (11) a Georgia BBT card; (12) a Kentucky food stamp card; and, (13) an orange folder with miscellaneous papers.

After seizing the items, the Government obtained search warrants for one of the two computers, the cellular phones, the thumb drive, and the floppy disks.

On February 22, 2011, Defendant filed his Motions to Suppress Statements and Evidence. After a hearing on March 17, 2011, the Magistrate Judge concluded: (i) that the warrantless search of the hotel room was not conducted

pursuant to valid consent; and (ii) that Defendant had abandoned his Motion to Suppress Statements. The Magistrate Judge stated that, even if the Motion to Suppress Statements had not been abandoned, the statements were given voluntarily, and after <u>Miranda</u> warnings were given. The Magistrate Judge recommended that Defendant's Motions to Suppress Evidence be granted and that the Motion to Suppress Statements be denied.

After the Magistrate Judge's R&R was issued on May 25, 2011, the Government moved to reconsider the suppression motions [49, 50]. In its Motion and supplemental briefs, the Government raised additional grounds to deny Defendant's Motion to Suppress Evidence. The additional grounds offered were: (1) consent to search the hotel room included consent to seize and search the electronic devices contained in it; (2) seizure of the items from the hotel was necessary as part of an inventory of belongings from a motel room after the occupant is arrested; (3) the searching agents had probable cause to seize the items and there were exigent circumstances that required seizure to prevent the destruction of evidence before a search warrant could be issued; (4) there was no violation of the Fourth Amendment in seizing the items because there was no impairment of Defendant's possessory interest in the seized items once he was arrested and taken into custody; (5) the seizure was a legitimate pre-search

investigatory seizure; and (6) the exclusionary rule should not be applied in this instance because the officers acted reasonably.

The Magistrate Judge conducted a further evidentiary hearing on the suppression motion. At the hearing, Special Agent Fonseca[2] testified further about the sequence of events on November 30, 2009, and when the Consent Form was read to Defendant. Additional post-hearing briefs were submitted by the parties. On July 22, 2011, the Magistrate Judge amended the R&R (the "Amended R&R") recommending that the Motion to Suppress Evidence be denied because "under these circumstances a reasonable officer would have concluded, in the absence of any objection by Defendant, that Defendant had consented to the terms set forth in the Consent Form and understood the officers would seize items they deemed to be of evidentiary value." (Order on Motion for Reconsideration of R&R at 7).

On August 7, 2011, Defendant filed his objections to the Amended R&R. Defendant objected to two specific Amended R&R findings: (1) that Defendant's silence in response to being read the Consent Form permitted a reasonable officer to believe Defendant's consent to search was effectively expanded to a consent to search and seize; and (2) that the language on the Consent Form explained to

---

[2] At the commencement of the hearing, Defendant objected to the consideration of the new grounds to deny the Motion to Suppress Evidence. The Magistrate Judge noted the objection and chose to conduct the hearing.

Defendant that agents could seize property related to their investigation. (Def.'s

Objs. to the R&R at 1-2, 4 n.1).[3]

## II.    DISCUSSION

A.    Standard of Review on Magistrate Judge's R&R

After conducting a careful and complete review of a magistrate judge's

findings and recommendations, a district judge may accept, reject, or modify the

magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v.

Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A

district judge "shall make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection is made."  28

U.S.C. § 636(b)(1).  This requires that the district judge "'give fresh consideration

to those issues to which specific objection has been made by a party.'"  Jeffrey S.

v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No.

_____

[3] At the supplemental hearing on June 15, 2011, Defendant objected to any
consideration of the arguments raised by the Government after the initial R&R was
issued.  Defendant, in his Supplemental Brief in Support of Suppression Motions
filed after the hearing, argues that those arguments should be considered waived
and that consideration of them would unfairly benefit the Government.  The Court
has the authority and an independent obligation to consider the admissibility of
evidence that is the subject of Defendant's Motion to Suppress.  See Williams v.
McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009); Stephens v. Tolbert, 471 F.3d
1173, 1176-77 (11th Cir. 2006).  To the extent that Defendant's objection at the
supplemental hearing constitutes a timely objection to the R&R, the objection is
overruled.

94-1609, 94th Cong., 2nd Sess. (1976)).  With respect to those findings and recommendations to which a party has not objected, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

No objections were filed regarding the recommendation that the Motion to Suppress Statements be denied and, finding that the Magistrate Judge did not plainly err, the Court adopts the recommendation.  Because Defendant filed timely objections to the recommendation that the Motion to Suppress Evidence be denied, the Court conducts a *de novo* review of the Magistrate Judge's recommendation that the motion be denied.

B.    Analysis

1.    *Voluntariness of consent*

A law enforcement officer may conduct a warrantless search based upon an individual's voluntary consent, and evidence discovered and seized during such a search may be admitted at trial.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  "Consent to a warrantless search is voluntary if it is 'the product of an essentially free and unconstrained choice.'"  United States v. Rios, No. 10-11822, 10-12420, 2011 WL 4912074, at *3 (11th Cir. Oct. 17, 2011) (quoting United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989)).  "The government bears the

burden of proving the voluntariness of consent." <u>United States v. Chemaly</u>, 741 F.2d 1346, 1352 (11th Cir. 1984).

Whether voluntary consent has been given is a question of fact determined by examining the totality of the circumstances. <u>Schneckloth</u>, 412 U.S. at 226-27; <u>Tukes v. Dugger</u>, 911 F.2d 508, 517 (11th Cir. 1990). Various factors may be considered in determining whether consent is voluntary, including: (1) an individual's knowledge of the right to refuse consent; (2) his or her youth, intelligence, lack of education, and language ability; (3) the degree to which the individual cooperates with the police; (4) the individual's attitude about the likelihood of discovery of illegal substances; and (5) the length of detention and the nature in which the individual is questioned, including physical punishment or other coercive police behavior. <u>Schneckloth</u>, 412 U.S. at 226-27; <u>United States v. Purcell</u>, 236 F.3d 1274, 1281 (11th Cir. 2001); <u>see also</u> <u>United States v. Simms</u>, 385 F.3d 1347, 1355 (11th Cir. 2004). In examining the totality of the circumstances, no single factor is dispositive. <u>See</u> <u>Schneckloth</u>, 412 U.S. at 226-27.

Consent cannot be implied by a defendant's election not to respond to a request to search. <u>See</u> <u>United States v. Gonzalez</u>, 71 F.3d 819, 829-30 (11th Cir. 1996), <u>abrogated on other grounds by</u>, <u>Arizona v. Gant</u>, 556 U.S. 332 (2009).

Misrepresentations, deceptions, and trickery to obtain consent may discredit that consent to a search was voluntary, including where a defendant is misled regarding the nature of an investigation or object of a search.  See United States v. Quintero, 648 F.3d 660, 670 (8th Cir. 2011); United States v. Jackson, 598 F.3d 340, 348 (7th Cir. 2010) ("Law enforcement agents may not obtain someone's consent to search by misrepresenting that they intend to look only for certain specified items and subsequently use that consent to justify a general exploratory search.").  Cf. United States v. Farley, 607 F.3d 1294, 1332 (11th Cir. 2010); United States v. Maddox, 316 F.App'x 908, 914 (11th Cir. 2009) (consent based on deceitful representations by officers obtaining consent can be invalid).

Consent to search where the purpose or object of a search is not communicated to a defendant does not make consent involuntary, where the totality of the circumstances indicates that the defendant understands the search is for evidence of illegal activity.  See United States v. Al-Marri, 230 F. Supp. 2d 535, 540-41 (S.D.N.Y. 2002) (citing United States v. Snow, 44 F.3d 133, 135 (2d Cir. 1995) ("That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent.")); United States

v. Edwards, No. 1:10-CR-132-RWS/AJB, 2010 WL 5184784, at *6 (N.D. Ga. Oct.

13, 2010).[4]

---

[4] The Eleventh Circuit has not specifically addressed the effect of an absence of knowledge regarding the purpose or object of a search on the voluntariness of consent. The court in United States v. Snow, 44 F.3d 133, 135 (2nd Cir. 1995), provides a persuasive analysis that specific knowledge of the purpose or object of a search is not required for a defendant to be able to voluntarily consent to a search:

> What meaning would a reasonable person attach to the word "search"?
>
> The word "search" carries a common meaning to the average person. Dictionary definitions furnish some guide: "to go over or look through for the purpose of finding something; explore; rummage; examine," "to examine closely and carefully; test and try; probe," "to find out or uncover by investigation." Webster's New World Dictionary 1210 (3d ed. 1988). The Oxford English Dictionary (2d ed. 1989) is not much different: "examination or scrutiny for the purpose of finding a person or thing," "look through, examine internally (a building, an apartment, a receptacle of any kind) in quest of some object concealed or lost." Id. at 804, 805.
>
> Thus, under either the King's or the Colonists' English, the term "search" implies something more than a superficial, external examination. It entails "looking through," "rummaging," "probing," "scrutiny," and "examining internally." We therefore conclude, based on the plain meaning of this common word, that an individual who consents to a search of [a place or object] should reasonably expect that readily-opened, closed containers discovered inside [that place or object] will be opened and examined.
>
> That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent. It is self-evident that a police officer seeking general permission to search [a place or object] is looking for evidence of illegal activity. It is just

2.    *Scope of Consent*

"When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless.  Rather, it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass."  United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (quoting United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990)).  "In conducting the reasonableness inquiry, the court must consider what the parties knew at the time to be the object of the search."  United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992). (citing Florida v. Jimeno, 500 U.S. 248, 251-52 (1991); Harris, 928 F.2d at 1118).

When evaluating what a police officer reasonably interpreted consent to encompass and the object of the search, the totality of the circumstances are examined to define the scope and terms of consent.  Jimeno, 500 U.S. at 251 ("The scope of a search is generally defined by its expressed object."); United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992) ("The scope of a consensual search is determined by the terms of the actual consent."); United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).  But see United States v. Infante-Ruiz, 13 F.3d

as obvious that such evidence might be hidden in closed containers.  If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.

498, 505 (1st Cir. 1994) (scope of consent for a search of a vehicle did not encompass a search of briefcase in a trunk that a defendant said was not his and where a police officer did not advise that he was looking for drugs). When a defendant generally consents to a search without specifying any restrictions or an expressed object, a police officer can reasonably interpret that consent encompasses any reasonable action necessary to carry out a search for evidence of illegal activity. See Snow, 44 F.3d at 135; United States v. De La Rosa, 922 F.2d 675, 679 (11th Cir. 1991); United States v. Milian-Rodriguez, 759 F.2d 1558, 1563 (11th Cir. 1985); Edwards, 2010 WL 5184784, at *6.

### 3.     *Authority to seize items when conducting a search*

"A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." Horton v. California, 456 U.S. 128, 133 (1990) (citing United States v. Jacobsen, 466 U.S. 109, 113 (1984)). While it is permissible to search locations and items pursuant to consent, it does not necessarily follow that an item that may legitimately be searched may be seized without there being an exception to the Fourth Amendment's prohibitions on unreasonable seizures. See Soldal v. Cook Cty., Ill., 506 U.S. 56, 62 (1992); Schneckloth, 412 U.S. at 219. There are, however, a number of exceptions to the Fourth Amendment that would authorize an officer to

seize an item while conducting a search without a warrant, such as consent, plain view, or exigent circumstances.  See, e.g., Schneckloth, 412 U.S. at 219 (consent allows for warrantless seizure); United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006) (contraband in plain view may be seized without a warrant); United States v. Santa, 236 F.3d 662, 669 (11th Cir. 2000) (exigent circumstances allows for warrantless seizure to address risk of loss, destruction, removal, or concealment of evidence); United States v. Vallimont, 378 F.App'x 972, 974 (11th Cir. 2010) (exigent circumstances allows for warrantless seizure of a computer to prevent destruction of computer evidence before warrant can be secured).

### 4. *Closed containers and consent to search an area*

When a search is conducted pursuant to a general consent given by a defendant, the scope of that consent encompasses authority to search and open any closed or locked containers that might hold evidence of illegal activity.  See Martinez, 949 F.2d at 1120 (general consent to search includes consent to open locked containers that may contain the objects of the search in same manner as pursuant to a warrant); see also United States v. Canipe, 569 U.S. 597, 606 (6th Cir. 2009) (general consent to search includes permission to search any container that might hold illegal objects).  "Courts have uniformly agreed that computers should be treated as if they were closed containers."  Al-Marri, 230 F. Supp. 2d at

541 (citing cases); <u>see</u> <u>also</u> <u>United States v. Blood</u>, 429 F.App'x 670, 671 (9th Cir. 2011) (laptop computer entitled to same Fourth Amendment protections as other closed containers and personal effects); <u>United States v. Brown</u>, 374 F.App'x 927, 937 (11th Cir. 2010) (search of computer authorized when scope authorizes search of open closets, chests, drawers, and containers for writings and pictures evidencing any criminal offense); <u>Bowe v. United States</u>, Nos. CV408-033, CR404-38, 2009 WL 2899107, at *19-*20 (S.D. Ga. May 20, 2009) (consent to search the home given by owner immediately after arrest for cocaine distribution makes it reasonable to construe his consent as encompassing both a search and seizure of any drug-trade related evidence, to include a computer); <u>United States v. Lucas</u>, No. 3:08CR-26-C, 2008 WL 4858197, at *7 (W.D. Ky. Sept. 23, 2008) (citing cases) ("The federal courts have held repeatedly that computers are to be analogized to closed containers for the purpose of the Fourth Amendment."), <u>aff'd</u>, 640 F.3d 168 (6th Cir. 2011) (holding that search of laptop fell within scope of voluntary consent to search). Cellular phones and other electronic data storage materials and devices also are treated as closed containers. <u>See</u> <u>id.</u> A general consent to search an area includes authority to search computers, cellular phones, and electronic data storage materials and devices in that area for evidence of illegal activity in the same manner as a search pursuant to a warrant. <u>See</u> <u>id.</u> That is, if a

law enforcement officer reasonably believed a computer, or other electronic device, contained evidence of illegal activity, the computer and devices can be searched.

Where the examination of computers, cellular phones, and electronic data storage materials and devices on site during a search is not feasible, seizure of those items for a temporary period is reasonable and necessary to conduct a search and to avoid any tampering or inadvertent destruction on site.  See United States v. Mitchell, 565 F.3d 1347, 1350 (11th Cir. 2009) (seizure of a computer hard drive necessary to prevent tampering before obtaining a warrant and conducting a search); Al-Marri, 230 F. Supp. 2d at 541 n.3 ("until such technology does become available, a complete seizure of the computer will be necessary, provided that proper safeguards are put in place to prevent problems such as evidence tampering"); United States v. Hunter, 13 F. Supp. 2d 574, 583 (D. Vt. 1998) ("[U]ntil technology and law enforcement expertise render on-site computer records searching both possible and practical, wholesale seizures, if adequately safeguarded, must occur."); United States v. Abbell, 963 F. Supp. 1178, 1199 (S.D. Fla. 1997).

5.    *Defendant's consent to search the hotel room and seizure of items*

Here, Defendant consented to a search his hotel room for evidence of illegal activity, without limitation, after being placed under arrest.  Defendant did not withdraw his consent.  The Court finds that the agents reasonably interpreted his consent to encompass authority to search the hotel room and all containers, including electronic data storage materials and devices, for evidence of illegal activity.[5]  As a result of Defendant's consent, the agents comprehensively searched the room for evidence of illegal activity.

a.  Electronic devices and materials

Based on that search for illegal activity, the agents believed it was necessary to, and did, seize the following items (the "Electronic Devices and Material"):

(1) a 'Prime Computer' (with all internal components including a hard drive and peripherals);
(2) a compact disc binder containing multiple cd's [sic];
(3) a black Samsung cellular telephone and charger;
(4) a grey Samsung AT&T cellular phone;
(5) a Toshiba laptop computer;

_____

[5] Where general consent to search a hotel room is given without any specific limitation, as in the case here, the totality of the circumstances supports finding that a police officer would reasonably interpret the scope of that consent to encompass a search of electronic data storage materials and devices for illegal activity.  See Al-Marri, 230 F. Supp. 2d at 541 ("a reasonable person—and in particular a graduate student in computer science who is fluent in English—would have recognized the agents' request to search his home, car and computer as a search for evidence of possible criminal activities").

(6) a green Sandisk 4 GB "thumb drive";
(7) two floppy discs (purple and orange in color);
(8) a Belkin wireless receiver; and,
(9) 8 sticks of computer memory.

The Court finds it was reasonable and necessary for the agents to seize, without conducting a search, the Electronic Devices and Material. The agents were not accompanied by a forensic computer examiner and lacked the equipment and expertise necessary to search the Electronic Devices and Material on site. It was reasonable to seize this electronic evidence for later review with the assistance of appropriate technical experts. Because seizure of these items was necessary to conduct a proper search pursuant to Defendant's general consent, the Court finds these items were lawfully seized during the search of the hotel room. See Mitchell, 565 F.3d at 1350; Al-Marri, 230 F. Supp. 2d at 541 n.3; Hunter, 13 F. Supp. 2d at 583; Abbell, 963 F. Supp. at 1199.[6]

b. Non-electronic evidence

Investigating agents also seized non-electronic items from the hotel room (the "Non-Electronic Evidence"), which included:

(1) a canvas bag containing a manilla [sic] envelope and various papers;
(2) a Georgia BBT card;

_____

[6] The Court notes that investigating officers subsequently obtained a warrant authorizing a search of some of the Electronic Devices and Material before a search of them was conducted.

(3) a Kentucky food stamp card; and,

(4) an orange folder with miscellaneous papers.

Unlike the Electronic Devices and Material, these four items could have

been searched for evidence of illegal activity in the hotel room pursuant to

Defendant's general consent.  Defendant's consent to search however did not

include consent to seize these four items when they could have been searched on

site[7] and there was no basis, in the record before the Court, for the agents to believe

they were contraband in plain view[8] or constituted or contained evidence of the

illegal activity being investigated.

---

[7] The agents could have temporarily seized and removed the items to a different area in order to conduct a search to determine if the items contained contraband or evidence of a crime.  See United States v. Place, 462 U.S. 696, 703 (1983); United States v. Puglisi, 723 F.2d 779, 784-85 (11th Cir. 1984).  If evidence of illegal activity was discovered during the search, then that incriminating material could have been seized pursuant to the plain view doctrine.  See Smith, 459 F.3d at 1290. With regards to the duration that an item may be temporarily seized to conduct a search, courts have held that items must not be retained for an unreasonable amount of time and must be returned to their owners if there is no basis to seize the items after an examination.  See Puglisi, 723 F.2d at 790, Mitchell, 565 F.3d at 1350; Vallimont, 378 F.App'x at 975-76.

[8] "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent."  Smith, 459 F.3d at 1290.  "Before a seizure is authorized under the plain view doctrine, the officers must have probable cause to believe that the item is contraband."  United States v. Whaley, 415 F.App'x 129, 133 (11th Cir. 2011) (citing Smith, 459 F.3d at 1290).  "If the incriminating nature of the item is not immediately apparent, then the seizure cannot be justified under the plain view doctrine."  Id.

The Court finds that Defendant did not consent to allowing these four items to be seized.[9] These four items, to have been properly seized, must fall within another exception besides consent to the Fourth Amendment's prohibition on unreasonable seizures or Defendant must have lacked a possessory interest in the items at the time they were seized.

### 6. Government's additional arguments

The Government argues in its Motion for Reconsideration and supplemental briefs that five additional bases besides consent exist regarding why the items taken from the hotel room were not unlawfully seized. The Court construes the arguments as: (1) seizure of the items from the hotel was necessary as part of an inventory of belongings from a motel room after the occupant is arrested; (2) the searching agents had probable cause to seize the items and there were exigent circumstances in existence that required seizure to prevent the destruction of evidence before a search warrant could be issued; (3) there was no violation of the Fourth Amendment in seizing the items because there was no impairment in Defendant's possessory interest in the seized items once he was arrested and taken

---

[9] Contrary to Defendant's objection, the Court finds the language on the Consent Form sufficiently explains that agents could seize property related to their investigation. To the extent that Defendant's objection is not moot, having found that Defendant did not consent to the terms of the Consent Form, the Court finds this objection is overruled.

into custody; (4) the seizure was a legitimate pre-search investigatory seizure; and

(5) the exclusionary rule should not be applied in this instance because the officers

acted reasonably.

The Court finds that Defendant lost any privacy interest in the hotel room

and items contained in it at the moment he was arrested and the Electronic Devices

and Material and the Non-Electronic Evidence were lawfully seized.  See United

States v. Mercer, 541 F.3d 1070, 1074-75 (11th Cir. 2008) (citing cases holding

that a defendant loses any expectation of privacy in a hotel room upon arrest).

The Court also finds that Special Agent Fonseca's expressed concerns about

wanting to secure anything valuable so that Defendant could not later claim theft

by the arresting officers are valid and justified a seizure and an inventory of all

items in the hotel room.  See United States v. Lipscomb, 435 F.2d 795, 800 (5th

Cir. 1970) (holding police have legitimate interest in inventorying items in a hotel

room when occupant arrested to secure that property and prevent allegations of

theft by police); (Tr. of Continuation of Suppression Hr'g of June 15, 2011 at

11:17-12:12).[10]

---

[10] The Court notes that the Magistrate Judge stated at the commencement of the
second evidentiary hearing: "I'm going to reopen the evidence and allow the
government to present whatever you want to present with respect to clarification of
the issues in light of your brief and in light of what you stated in your brief."  (Tr.
of Continuation of Suppression Hr'g of June 15, 2011 at 2:21-24).  The

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge E. Clayton Scofield, III's Report and Recommendation ("R&R") [38] and Order on Motion for Reconsideration of R&R [49, 50] regarding Defendant's Motions to Suppress Statements and Evidence [25, 26] are **ADOPTED** and Defendant's Motions to Suppress Statements and Evidence [25, 26] are **DENIED**.  Defendant's Objections to the R&R [52] are **OVERRULED**.[11]

**SO ORDERED** this 3rd day of November, 2011.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

Government offered testimony from Special Agent Fonseca at the second evidentiary hearing.  The Government did not provide additional testimony in support of its arguments from the agent who actually searched the room, Special Agent Greene.  Without testimony from the agent who searched the room about what he saw and why he seized what he did, the Court cannot conclude, on the record before the Court, that seizure of any of the items was justified based on probable cause, exigent circumstances, or a need for a pre-search investigative seizure.

[11] The Court notes that it concurs with the objection that Defendant's silence in response to being read the Consent Form did not permit a reasonable officer to believe Defendant's consent to search was effectively expanded to consent to search and seize.  Because the Court finds that all the items in the room were lawfully seized, the objection is necessarily overruled.